USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑   X

ESSEX CAPITAL CORPORATION,                        :

                    Plaintiff,            :

    -against-                                :            No. 17 Civ. 6347 (JFK)
                                                  :               **OPINION & ORDER**
VIVEK GARIPALLI, SEQUOIA HEALTHCARE              :
SERVICES, LLC, and WINTHROP HAYES,               :

                Defendants.              :

‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑   X

<u>APPEARANCES</u>

FOR PLAINTIFF ESSEX CAPITAL CORPORATION
    Jeffrey Steven Kramer
    Casey Brian Howard
    LOCKE LORD LLP

FOR DEFENDANTS VIVEK GARIPALLI, SEQUOIA HEALTHCARE SERVICES,
LLC, and WINTHROP HAYES
    Louis Anthony Modugno
    Greg Trif
    Michael Rato
    MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendants Vivek Garipalli ("Garipalli"), Sequoia Healthcare Services, LLC ("Sequoia"), and Winthrop Hayes' ("Hayes") (collectively, "Defendants") seeking dismissal of Plaintiff Essex Capital Corporation's ("Essex") first amended complaint ("FAC"). For the reasons below, Defendants' motion is granted with respect to Plaintiff's claims for breach of contract and promissory estoppel, but denied with respect to Plaintiff's two fraudulent inducement claims.

## I. Background

### A. Factual Background

The following facts and allegations are taken from the FAC and, at this stage, must be deemed true. Plaintiff Essex is a California corporation with its principal place of business in Santa Barbara, California. (First Am. Compl. ¶ 7, ECF No. 20 (filed Nov. 2, 2017) [hereinafter "FAC"].) Essex is a "sale-leaseback company" that "purchases equipment from companies in need of cash flow and then leases that equipment back to them." (Id. ¶ 16.) Ralph Iannelli ("Iannelli") is Essex's founder and its current CEO. (Id. ¶ 17.)

Defendants Garipalli and Hayes are United States citizens domiciled in New York. (Id. ¶¶ 8-9.) Defendant Sequoia is a New Jersey limited liability company. (Id. ¶ 10.) At all relevant times, Hayes was President of Passaic Healthcare Services, LLC, which does business as Allcare Medical ("Allcare"), an entity "largely owned by defendant Sequoia and its principal, defendant Garipalli" and ultimately controlled by Garipalli. (Id. ¶¶ 19-21.) Further, Garipalli—through Sequoia—funded Allcare's operations, making Sequoia not just Allcare's parent company and controlling shareholder, but also a major creditor. (Id. ¶ 22.)

Between June 23, 2011 and January 29, 2013, Essex and Allcare signed six Commercial Lease Agreements ("CLAs") with nearly identical terms. (Id. ¶¶ 25-26.) Under these CLAs, Essex

provided Allcare with nearly $5 million for the titles to certain Allcare medical equipment. (Id.)  Essex then leased this equipment back to Allcare in exchange for rent payments. (Id.)

Allcare initially made all rent payments on time, but, in April 2013, its payments "became sporadic," prompting Iannelli to make several inquiries about Allcare's financial stability throughout the Spring and Summer of 2013. (Id. ¶¶ 26, 38-39, 43.)  Though Allcare was indeed having financial difficulties, Hayes and Garipalli made misrepresentations to Iannelli that Allcare was financially stable in an effort to ensure continued cash flow from Essex. (Id. ¶¶ 40, 44-46.)  Relying on these misrepresentations, Essex signed a CLA with Allcare on June 21, 2013 and several subsequent CLAs. (Id. ¶¶ 45, 77.)

By October 2013, Allcare was failing to cover its debts and sought additional cash via a credit line from MidCap Financial Services, LLC ("MidCap"). (Id. ¶¶ 49-50.)  To insure Essex's continued cash flow via additional CLAs and to counter the possibility that Essex would put Allcare into default, Garipalli and Hayes concealed the actual intent of their credit line and misrepresented to Essex that MidCap would only agree to the credit line if (1) Essex surrendered its right to default under the CLAs, and (2) Allcare agreed to only use the money to facilitate ongoing operations, not to pay its creditors. (Id. ¶¶ 51, 53-54, 56.)  Relying on these representations, Essex entered

into an October 15, 2013 Equipment Lessor Agreement ("ELA")
under which Essex agreed to surrender its right to put Allcare
into default under the CLAs and agreed not to "repossess, sell,
proceed to sale or realize upon any" of the leased equipment.
(Id. ¶ 55.) Also on October 15, 2013, Allcare and MidCap
entered into the Credit and Security Agreement ("MidCap Loan
Agreement"). (Id. ¶ 56; Credit and Security Agreement, ECF No.
22-4 (filed Nov. 15, 2017) [hereinafter "MLA"].)

In or around April 2014, Garipalli promised Iannelli that
if Essex refrained from declaring a default under the CLAs, he
would personally contribute the funds necessary to keep Allcare
in business. (FAC ¶¶ 92, 97.) In reliance on this promise,
Plaintiff did not seek default or take action to enforce its
rights under the CLAs. (Id. ¶¶ 93, 95, 98-99.) At the end of
2014, after the relevant terms of the ELA had expired, Iannelli
sent a default letter to Garipalli. (Id. ¶ 69.) Garipalli did
not respond to that letter or follow up text messages. (Id.)

On December 31, 2014, Passaic, doing business as Allcare,
filed a bankruptcy petition. (Id. ¶ 70.)

**B. Procedural History**

On April 27, 2017, Essex filed a complaint in the Superior
Court of California, Santa Barbara County which Essex describes
as "extremely similar to the original complaint [it] filed in
this Court." (Mem. of L. in Opp. to Defs.' Mot. to Dismiss at

4

17, ECF No. 25 (filed Jan. 12, 2018) [hereinafter "Opp."].)
Defendants removed that state court case to the U.S. District
Court for the Central District of California, which dismissed
the complaint for lack of personal jurisdiction over the
Defendants. (Id.)

On August 21, 2017, Essex filed its initial complaint with
this Court. On November 2, 2017, Essex filed the FAC which
asserts two claims for fraudulent inducement against all
Defendants; a claim for breach of contract against Defendant
Garipalli; and a claim for promissory estoppel also against
Defendant Garipalli. (FAC ¶¶ 71-100.)

On November 15, 2017, Defendants brought the instant motion
to dismiss the FAC.

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6),
"a complaint must contain sufficient factual matter . . . to
'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court's charge
in ruling on a Rule 12(b)(6) motion "is merely to assess the
legal feasibility of the complaint, not to assay the weight of
the evidence which might be offered in support thereof."
Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of
N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v.

5

Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). The Court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint that offers such "labels and conclusions" or naked assertions without "further factual enhancement" will not survive a motion to dismiss. Id. (citing Twombly, 550 U.S. at 555, 557).

## III. Discussion

Defendants argue that Essex's FAC should be dismissed as (1) all four of Essex's claims are barred by the applicable statutes of limitations, (2) Essex's fraudulent inducement claims (Claims 1 and 2) are barred by the express terms of various applicable agreements, and (3) the ELA bars Essex's contract claims (Claims 3 and 4). (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 5-17, ECF No. 22-1 (filed Nov. 15, 2017) [hereinafter "Supp."].)

### A. Statute of Limitations

A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss. In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009).

However, courts in this district have made an exception where (1) the complaint facially shows noncompliance with the limitations period, and (2) the affirmative defense clearly appears on the face of the pleadings. Tesla Wall Systems, LLC v. Related Companies, L.P., 17-cv-5966 (JSR), 2017 WL 6507110, at *6 (S.D.N.Y. Dec. 18, 2017) (citing S. African Apartheid, 617 F. Supp. 2d at 287); see also McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (statute of limitations bar warrants 12(b)(6) dismissal "if the defense appears on the face of the complaint"); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). Where a plaintiff's "claims are time-barred on the face of its own complaint, [plaintiff] has the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled." Voiceone Commc'ns, LLC v. Google Inc., No. 12 Civ. 9433 (PGG), 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014) (quoting OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 504 (D. Conn. 2007)).

## 1. Fraudulent Inducement (Claims 1 & 2)

Defendants argue that California's statute of limitations applies to Essex's two claims for fraudulent inducement and

requires fraud claims to be brought within three years of "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Supp. at 8-9 (quoting Cal Code Civ. Proc. § 338(d)).) They further argue that the complaint alleges the fraud was discovered in June 2014, meaning Essex had until June 2017 to bring these claims. (Id. at 9 (citing FAC ¶ 66).) As Essex did not file its complaint in this Court until August 21, 2017, they argue, these claims are time barred. (Id.)

California's statute of limitations for fraudulent inducement is three years from the discovery of the fraud. Precision Orthopedic Implants Inc. v. Limacorporate S.P.A., 16-cv-2945-ODW, 2016 WL 7378878, at *4 (C.D. Cal. Dec. 20, 2016) (citing Cal. Code of Civ. P. § 338(d)). The FAC, however, is silent as to when the fraud was discovered. Defendants argue that the FAC's paragraph 66 alleges Essex discovered the fraud in June 2014. (Supp. at 9.) It does not. That paragraph states only that, in or around June 2014, Hayes "confessed to Iannelli that MidCap significantly reduced Allcare's credit line because 'the receivables aren't there.'" (FAC ¶ 66.) This so-called confession does not pertain to any of the alleged misrepresentations on which Plaintiff has based its fraud claims; Plaintiff could not conclude from it that (1) certain financials were falsified, (2) Allcare's recent hires would not increase revenue, or (3) MidCap would only extend Allcare a new

8

credit line if (i) Allcare agreed to use the money to facilitate
ongoing operations and (ii) Essex agreed not to put Allcare into
default. (Id. ¶¶ 73, 82.)

As the FAC lacks any allegations from which this Court can
determine the date of the fraud's discovery, there is
insufficient information in the FAC to "facially show
noncompliance with the limitations period." See Tesla Wall
Systems, LLC, 2017 WL 6507110, at *6. Accordingly, at this
stage, Essex's first and second claims cannot be dismissed as
time barred. Id.; Obanya v. Select Portfolio Servicing, Inc.,
No. 14 Civ. 5255 (NGG)(LB), 2015 WL 5793603, at *6 n.9 (E.D.N.Y.
Sept. 30, 2015).

## 2. Breach of Contract & Promissory Estoppel (Claims 3 & 4)

Defendants and Plaintiff dispute whether Plaintiff's third
and fourth claims—for breach of contract and promissory estoppel
respectively—are time barred. Defendants argue that
California's statute of limitations applies, while Plaintiff
argues that either New York or New Jersey law is applicable.
(Supp. at 7-8 (citing Cal. Code Civ. Proc. § 339); Opp. at 18.)

As jurisdiction in this case is predicated on diversity of
citizenship, this Court applies New York's choice of law rules.
Bakalar v. Vavra, 619 F.3d 136, 139 (2d Cir. 2010) (citing
Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).
Under New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") §

202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either (1) New York or (2) the state where the cause of action accrued." Tesla Wall, 2017 WL 6507110 at *6 (quoting Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015) (quotation omitted)). Under this statute, "a business's principal place of business constitutes the sole residency of that business entity." Voiceone, 2014 WL 10936546 at *9 (quoting Woori Bank v. Merrill Lynch, 923 F. Supp. 2d 491, 495 (S.D.N.Y. 2013)). Further, when the claimed injury is economic, "the cause of action typically accrues 'where the plaintiff resides and sustains the economic impact of the loss.'" Portfolio Recovery Assocs., LLC v. King, 14 N.Y.3d 410, 416 (N.Y. 2010) (quoting Global Fin. Corp, 93 N.Y.2d 525 at 529); see also Voiceone, 2014 WL 10936546 at *9 (the cause of action "accrues at the time and place of the injury" (quoting Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (N.Y. 1999))).

Here, Plaintiff is a California corporation with its principal place of business in California. (FAC ¶ 7.) As such, it is solely a resident of California. Voiceone, 2014 WL 10936546 at *9. Further, as both the damages alleged and remedy sought are economic, these claims accrued in California. Portfolio Recovery Assocs, 14 N.Y.3d at 416. Accordingly,

Plaintiff is a non-resident of New York suing upon a cause of action that accrued outside of New York and N.Y. C.P.L.R. § 202 applies.

Since, California's two year period of limitations is shorter than New York's six year period, California's statute of limitation applies. See N.Y. C.P.L.R. § 202; Warren v. Wells Fargo & Co., No. 3:16-cv-2872-CAB-(NLS), 2017 WL 4876212, at *5 (S.D. Cal. Oct. 27, 2017) (citing Cal. Civ. Proc. Code §§ 337); Huang v. Siam Commercial Bank Public Co. Ltd., 247 F. App'x 299, 301 & 301 n.2 (2d Cir. 2007); St. John's University, New York v. Bolton, 757 F. Supp. 2d 144, 163 (E.D.N.Y. 2010) (citing T & N PLC v. Fred S. James & Co. of New York, Inc., 29 F.3d 57, 59 (2d Cir. 1994); Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402 (N.Y. 1993); N.Y. C.P.L.R. § 203(a)). Under California law, a claim for breach of contract accrues "when the plaintiff discovers, or could reasonably have discovered, the breach and its cause." Wong v. Tomaszewski, No. 2:18-cv-00039-MCE-AC, 2018 WL 4628269, at *4 (E.D. Cal. Sept. 27, 2018) (citing Angeles Chemical Co., Inc. v. Spencer & Jones, 44 Cal. App. 4th 112, 119 (Cal. Ct. App. 1996)). The statute of limitations for a promissory estoppel claim, however, accrues when the oral contract is created. Parker v. U.S. Bancorp, No. ED CV 16-70-DMG, 2016 WL 7495824, at *7 (C.D. Cal. Sept. 13, 2016) (finding a promissory estoppel claim on an oral agreement

11

time barred where the oral promises and representations on which the claim was based pre-dated the complaint by more than two years); McMillan v. Bank of America, N.A., No. 14cv1575-MMA (BLM), 2015 WL 1942743, at *8 (S.D. Cal. Apr. 15, 2015) (same).

Here, the alleged oral contracts on which both claims are based were made in or around April 2014. (FAC ¶¶ 92, 97.) While the FAC is unclear on when exactly Essex discovered the breach, it is clear that it reasonably could have discovered it when Allcare filed for bankruptcy on December 31, 2014. (FAC ¶ 70.) Accordingly, even if this Court were to hold that Plaintiff's filing in California State Court on April 27, 2017 was applicable, both the breach of contract and promissory estoppel claims would still be time barred under California law.

As Plaintiff has pled no facts sufficient to establish that the statute of limitation should be tolled (Voiceone, 2014 WL 10936546 at 7, 12), Plaintiff's breach of contract and promissory estoppel claims are time barred and must be dismissed.

## B. The Applicable Agreements do not bar Plaintiff's Fraudulent Inducement Claims (Claims 1 & 2)

Defendants argue that, if not time barred, Essex's first and second claims—both for fraudulent inducement—must be dismissed as provisions in various applicable agreements preclude them.

## 1. CLA Fraudulent Inducement

Essex's first claim alleges that Garipalli and Hayes knowingly made two deliberate misrepresentations that Essex relied on when it entered into all post-June 20, 2013 CLAs. (Id. ¶¶ 75-77.) First, both men told Iannelli that hiring a competitor's employees would lead to increased revenues of $120 to 150 million. (Id. ¶¶ 73-74.) Second, Hayes emailed Iannelli deliberately doctored Allcare financials which falsely reported an additional $5.5 million in revenue. (Id.)

Defendants argue that a merger provision—included with identical language in every CLA—precludes Essex from now arguing that it relied on any statement or representation appearing outside of the contract in entering into the CLAs. (Supp. at 12-13.) As Allcare's alleged misrepresentations were not included in the CLAs, they argue, Essex cannot use them as part of a fraudulent inducement claim. (Id. at 13-14.)

The merger clause in question states that "NEITHER PARTY RELIES UPON ANY OTHER STATEMENT OR REPRESENTATION, EXCEPT FOR THE CREDIT APPLICATION AND FINANCIAL STATEMENTS OR LESSEE AND ANY GUARANTOR PROVIDED IN CONNECTION HEREWITH." (Commercial Lease Agreement, Art. 18, ECF No. 22-3 (filed Nov. 15, 2017) (emphasis added).) Though Defendants concede that this language makes an exception for reliance on financial statements, they argue that this exception does not apply to the falsified

13

financial statement mentioned in the FAC as "Essex does not allege that those 'financial statements' were provided to Essex 'in connection' with Essex's entry into the Lease Agreements." (Supp. at 14-15.)

Here, Plaintiff alleges that Hayes provided Iannelli with "falsified financials" and, in the very next paragraph, states that it relied on "the financials Hayes provided to Essex" when it entered the June 21, 2013 CLA. (FAC ¶¶ 44-45.) Additionally, Plaintiff alleges that Hayes "emailed Iannelli false financials for Allcare," that Iannelli had "no way of knowing that the financials provided to him were false," and that "Essex entered into the June 21, 2013 [CLA], and subsequent [CLAs], as a result of the representations Garipalli and Hayes made to Iannelli." (Id. ¶¶ 73, 76-77.) Giving every reasonable inference to the Plaintiff, as the Court is required to do at this stage, the FAC adequately alleges that Hayes provided the falsified financials "in connection" with the relevant CLAs. As such, the merger clause does not preclude this allegation and Defendants' motion to dismiss this first claim for fraudulent inducement is denied.

## 2. ELA Fraudulent Inducement

Essex's second claim alleges that Garipalli and Hayes made two misrepresentations to Essex to induce it to enter into the ELA: that MidCap would only offer a new credit line if (1) Essex surrendered its right to put Allcare into default under

14

the CLAs and (2) Allcare agreed to use the money to facilitate ongoing operations, not to pay Allcare's creditors. (Id. ¶ 82.) Relying on these misrepresentations, Plaintiff alleges it entered into the ELA "under which Essex agreed to surrender its right to put Allcare into default under the [CLAs] and agreed not to 'repossess, sell, proceed to sale or realize upon any' of the leased equipment." (Id. ¶ 83.)

Defendants argue that this claim for fraudulent inducement is barred as:  (1) the ELA's merger clause bars Essex from relying on statements outside the agreement, and (2) the MidCap Loan Agreement specifies that Allcare can use MidCap funds to pay its creditors. (Supp. at 10-12.)

### a. The ELA

Defendants argue that the ELA's merger clause "bars Essex from relying upon any representation or statement as its 'inducement' to enter into the ELA that is not expressly contained in that agreement" under either New York or California law. (Id. at 11-12.)  Plaintiff responds that regardless of whether the Court applies New York or California law, a "general merger clause" like the one in the ELA "will not bar fraudulent inducement claims." (Opp. at 22.)

As previously mentioned, this Court must apply New York's choice of law standard. Bakalar, 619 F.3d at 139.  In New York, "the first inquiry in a case presenting a potential choice of

15

law issue is whether there is an actual conflict of laws on the issues presented. If not, no choice of law analysis is necessary." Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011) (internal citations omitted); see also In the Matter of Allstate Ins. Co., 81 N.Y.2d 219, 223 (N.Y. 1993). To find an "'actual conflict,' the laws in question must provide different substantive rules in each jurisdiction that are 'relevant' to the issue at hand and have a 'significant possible effect on the outcome of a trial.'" Elmaliach v. Bank of China Ltd., 971 N.Y.S.2d 504, 512 (1st Dep't 2013) (quoting Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005) (citations omitted)).

Under California law, a merger or integration clause, like the merger clause in question, generally does not preclude a plaintiff's fraud claim. U.S. Bank, N.A. v. Miller, CV 12-05632 MMM (MANx), 2013 WL 12183654, at *5 (C.D. Cal. Sept. 19, 2013); United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp., 660 F. Supp. 2d 1163, 1176 n. 15 (C.D. Cal. 2009) (citing Hinesley v. Oakshade Town Ctr., 135 Cal. App. 4th 289, 301 (Cal. Ct. App. 2005)). Indeed, a "party may claim fraud in the inducement of a contract containing a provision disclaiming any fraudulent misrepresentations and introduce parol evidence to show such fraud." Hinesley, 135 Cal. App. 4th at 301 (collecting

16

cases); see also U.S. Bank, 2013 WL 12183654, at *5 (citing Cal. Code Civ. Proc. § 1856(f)).

Likewise, under New York law, "a general merger clause does not, standing alone, preclude a claim of fraudulent inducement." PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017) (quoting Robinson v. Deutsche Bank Tr. Co. Americas, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008)). A merger clause is "general" when it resembles "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." Id. (quoting Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993)). Preclusion will occur only where the contract disclaims "the existence of or reliance upon specified representations." Id. (quoting Yanakas, 7 F.3d at 315).

Here, the merger clause in question reads that the ELA "constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof." (ELA at § 9.8.) This clause clearly lacks specified representations, containing instead the type of omnibus language of a general merger clause. PetEdge, 234 F. Supp. 3d at 488. As such, this clause does not preclude Plaintiff's second fraudulent inducement claim under either New York or California law.

17

Accordingly, Defendants' motion to dismiss Plaintiff's second fraudulent inducement claim on this basis is denied.

### b. The MidCap Loan Agreement

Defendants next argue that, a section of the MidCap Loan Agreement expressly allows Allcare to use the proceeds of their loan from MidCap to refinance debt existing on the closing date of that loan. (Supp. at 11-12 (citing MLA § 4.7).) Defendants argue that because this section directly contradicts one of the misrepresentations Plaintiff alleges Defendants made to induce it to enter into the ELA, under both New York and California law this allegation cannot be the basis of a fraudulent inducement claim. (Id. at 11-12 (citing Adams v. Intralinks, Inc., No. 03 Civ. 5384 SAS, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004) (New York); Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc., 971 F.2d 272, 281 (9th Cir. 1992) (California)).) Accordingly, they argue, this claim must be dismissed.

Defendants' reliance on Adams and Brinderson is misplaced. In both cases, the representations that the plaintiffs allegedly relied on were in direct contradiction to clauses of agreements the plaintiffs themselves had executed. See Adams, 2004 WL 1627313, at *7; Brinderson, 971 F.2d at 281. Here, however, the representation in question is contradicted by an agreement Allcare made with MidCap to which Plaintiff was not a party. Accordingly, the terms of this agreement do not preclude

18

Defendant's fraudulent inducement claim and their motion to dismiss this claim is denied.

## IV. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment is not warranted, however, "absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable." Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014) (quoting Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004)).

Accordingly, should Plaintiff wish to amend its complaint, it must demonstrate (1) how it will cure the deficiencies in its claims by filing a proposed amended complaint and (2) that justice requires granting leave to amend. Such demonstration shall be filed within 30 days of the date of this Opinion.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's complaint is GRANTED with respect to the claims for breach of contract and promissory estoppel, but DENIED with respect to the two claims of fraudulent inducement.

The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 22.

**SO ORDERED.**

Dated:       New York, New York
             December 18, 2018

                                        John F. Keenan
                                  _____
                                        John F. Keenan
                                  United States District Judge